No. 92-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

C B & F DEVELOPMENT CORPORATION,

    Plaintiff and Respondent,

-vs-

CULBERTSON STATE BANK,

    Defendant and Appellant.

**FILED**

DEC 17 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ward E. Taleff, Floyd D. Corder, Alexander, Baucus
& Linnell, Great Falls, Montana

    For Respondent:

        Laura Christoffersen, Matthew W. Knierim, Gallagher,
Archambeault & Knierim, Wolf Point, Montana

Submitted on Briefs: September 24, 1992
Decided: December 17, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a jury verdict in the Fifteenth Judicial District Court, Roosevelt County, awarding damages of $300,000 to C B & F Development Corporation in a contract action against Culbertson State Bank. We affirm.

We address the following issues:

1. Was the evidence sufficient as a matter of law to justify the verdict?

2. Did the District Court abuse its discretion by instructing the jury on equitable estoppel and on a third-party beneficiary theory?

C B & F Development Corporation (C B & F) was a feed business located in Culbertson, Montana. It originated as an Economic Development Corporation in the early 1960's and from its inception maintained a twenty year relationship with Culbertson State Bank (Bank). The Bank provided C B & F with an annual line of operating credit, negotiated yearly.

C B & F obtained one loan from the Bank involving the Small Business Administration (SBA). This loan, SBA-H, made in 1983, was for a total of $418,400, seventy percent of which was guaranteed by the SBA through its Helena, Montana office. The loan term was for ten years, with C B & F paying monthly payments.

A second loan, SBA-S, was a direct loan from the SBA San Francisco office under its disaster program. C B & F applied for the loan in order to alleviate its cash flow difficulties due to the 1985 drought. The second loan for $140,000 was approved by the

2

San Francisco SBA on June 27, 1986. This loan was secured by real and personal property and by the personal guarantees of several directors of C B & F.

The Loan Authorization and Agreement between SBA and C B & F covering the second loan for $140,000 provided that prior to disbursement of any loan proceeds C B & F will provide a letter of commitment from Culbertson State Bank to the SBA which would state that the Bank would grant borrower an operating line of credit for 1986 with "approximately the same terms, conditions, and credit limit as granted to the Borrower prior to the disaster period." The Bank wrote a letter of commitment to the SBA dated August 6, 1986, which stated in part:

> In reply to page 5 of the June 27, 1986 Loan Authorization and Agreement for the operating line for the balance of 1986, [t]he Culbertson State Bank, in keeping with our lending limit of $140,000, can extend up to $41,000.00 to CB&F Dev., if the balance of the present operating line of $42,551.43 principal and $3,061.65 interest to date, is paid. Also this would be subject to a subordination from SBA in Helena, under the original loan dated 2/1/83 covering all Real Estate (approx 5 acres) and all Machinery, Equipment and Inventory, releasing the inventory to secure the needed capital needs. We have enclosed copies of the last years line of $71,000., which covered $25,000.00 from the draught (sic) of 1984, to show how we are sec[ur]ed to 8/13/86.

The proceeds of this loan were used to pay off the Bank as required under the letter of commitment. The Bank accepted the payment, but subsequently refused to provide the operating line of credit for 1986.

C B & F brought suit against the Bank based on various tort and contract theories. The Bank answered and filed a third party complaint against the SBA. The case was removed to the United

3

States District Court for the District of Montana, Billings Division. By memorandum and order filed April 10, 1991, the federal court granted SBA's combined motion for dismissal and for summary judgment; the court then remanded the case to the state district court because the Bank had failed to allege federal jurisdictional issues or name the United States as a party.

C B & F filed an amended complaint dated May 3, 1991, alleging negligent misrepresentation, breach of express contract, breach of implied contract, estoppel, and fraud and punitive damages. The case was tried before a jury on January 21, 1992. After submission by C B & F of its case-in-chief, the District Court, pursuant to motion, limited the issues to a consideration of contract theories. On January 24, 1992, the jury entered a verdict of $300,000 in favor of C B & F. The Bank moved for judgment notwithstanding the verdict or in the alternative for a new trial. The District Court denied these motions and the Bank appealed.

I.

Was the evidence sufficient as a matter of law to justify the verdict?

The Bank contends that the record does not support the jury's verdict for C B & F because no contract existed between it and SBA or between it and C B & F.

Our function on appeal from a jury verdict is to review the evidence in the light most favorable to the prevailing party and to determine whether substantial evidence supports the verdict. Hash v. State (1991), 247 Mont. 497, 807 P.2d 1363. After a careful

4

review of the record, we conclude that substantial evidence was presented supporting the jury verdict.

The Bank contends that evidence of the requisite element of contractual consent (offer and acceptance) is not contained in the record. According to the Bank, no written contract between C B & F and the Bank existed. The Bank's position is that no meeting of the minds on essential terms occurred, thus there could be no valid offer or unconditional acceptance of that offer. C B & F contends that the Bank erroneously limits its consideration to the August 6, 1986 letter of commitment to the SBA as though that were the only evidence to support a contractual relationship. C B & F refers to various other matters presented to establish the contract.

This case involves two contracts made between three parties. "A contract is either express or implied. An express contract is one the terms of which are stated in words. An implied contract is one the existence and terms of which are manifested by conduct." Section 28-2-103, MCA. The first contract, between SBA and C B & F, is an express contract. A condition precedent to that express contract, is the submission to SBA by the Bank of a letter of intent to loan C B & F an operating line of credit.

The second contract is that between C B & F and the Bank. While no written contract existed here, plaintiff contends a contract did exist. As stated in § 28-2-103, MCA, an implied contract is one the existence and terms of which are manifested by conduct. See Billings Clinic v. Peat Marwick Main and Co. (1990), 244 Mont. 324, 797 P.2d 899. Here, we look to the Bank's and C B

5

& F's conduct to see if it is sufficient to establish an implied contract.

The record shows that C B & F specifically requested an operating loan commitment letter from the Bank as a prerequisite to obtaining the disaster loan from SBA. The record shows that the Bank assured C B & F it would send this letter. After a twenty year business relationship in which the Bank had loaned it operating money every year, C B & F had reason to, and did, accept the assurance of the Bank's official.

The record further shows that a Bank officer spoke personally with an SBA officer on several occasions concerning its intent to loan money to C B & F. The record establishes that the Bank understood that SBA needed a firm commitment and that the letter it sent to SBA had been interpreted as such a commitment. SBA notes indicate its understanding that the Bank would loan C B & F the money pursuant to its pre-1986 terms and conditions.

C B & F also understood that the Bank would make an operating loan for 1986. As part of the conditions for such an operating loan, the Bank required C B & F to repay its outstanding operating debt. The Bank argues that C B & F never received a copy of the August 6 letter of commitment so it could not have agreed to any contractual terms. The record shows that C B & F had been informed by SBA of the contents of the Bank letter. Subsequently, the Bank accepted payment of the C B & F debt, knowing that the money came from SBA, and fulfilled its own condition for the operating loan.

The Bank's acceptance of the payment of C B & F's operating debt with SBA funds is evidence that the Bank agreed to loan C B & F money. C B & F's conduct in repaying the loan indicates that it understood that in order to receive the new operating line of credit, it would have to repay its existing operating debt. Yet, the Bank argues that there can be no contract between it and C B & F because essential terms such as the amount of the loan and the rate of interest were not established.

The letter of commitment from the Bank to SBA establishes a $41,000 credit limit. Testimony at trial established that over a twenty year business history, the interest rates on the yearly operating line of credit fluctuated with the amount borrowed and general interest rate.

In SBA's Loan Authorization and Agreement to C B & F covering the 1986 loan to C B & F, SBA states that the Bank must provide a letter of commitment to SBA indicating an extension of an operating line of credit to C B & F on "approximately the same terms, conditions, and credit limit as granted" prior to the 1986 loan. The Bank and C B & F understood that the Bank's August 6 commitment letter was written with these implied terms. As a result, the Bank was required to make the loan on terms and conditions similar to those of preceding years.

The Bank contends that its second condition to extending the line of credit was not completed because SBA did not subordinate its loan. Testimony by the SBA at trial established that the Bank failed to request the subordination so none was issued.

7

The elements required to establish an implied contract are: identifiable parties, consent, a lawful object and consideration. Daniels v. Thomas, Dean & Hoskins, Inc. (1990), 246 Mont. 125, 804 P.2d 359. The parties to the implied contract were the Bank and C B & F. We have discussed, and the record evinces, consent by both parties to the operating loan. As far as consideration is concerned, C B & F received its disaster loan and paid the delinquent current operating loan to the Bank; and the Bank accepted the delinquent amount from the SBA funds. We conclude that the implied contract between the Bank and C B & F was established by substantial evidence.

C B & F argues that the evidence supports the contractual theory of promissory estoppel. Because we conclude that an implied contract existed between the Bank and C B & F, we do not find it necessary to discuss promissory estoppel in detail. We do point out that substantial evidence exists from which the jury could also have concluded that promissory estoppel prevents the Bank from denying a contractual relationship between it and C B & F.

We therefore hold that the evidence presented was sufficient to justify the jury verdict.

## II.

Did the District Court err by instructing the jury on equitable estoppel and on a third party beneficiary theory?

Both plaintiff and defendant provided the court with an estoppel instruction which the court gave to the jury. The Bank offered a promissory estoppel instruction. C B & F's instruction

8

merely designated its instruction as one for "estoppel;" the Bank contends the instruction was really an equitable estoppel instruction. As such, the Bank argues the instruction was inappropriate because equitable estoppel is a defense theory. The Bank further argues that the giving of both instructions was confusing for the jury. C B & F argues that its instruction was not designated as an equitable estoppel instruction and that nothing in the simultaneous giving of the two instructions was confusing.

C B & F's instruction with six elements specifically mentions "silence" as a possible conduct which could indicate the party is estopped from denying a contract. The Bank objects to use of the "silence" element; yet the facts of this case strongly suggest that silence could have played a part in analyzing the Bank's conduct.

This Court has recognized equitable estoppel, promissory estoppel, and estoppel by silence. Northwest Potato Sales, Inc. v. Beck (1984), 208 Mont. 310, 678 P.2d 1138. But, in so doing we have also determined that the lines separating all three kinds of estoppel are blurry at best:

> Although we base our decision on estoppel by silence, we cannot deny that the facts may fit elements of estoppel also appropriate to equitable estoppel. This is so, because as is so often the case in any branch of the law, each form of estoppel does not fall into a neatly packaged and exclusive category. Rather, the forms of estoppel also blend with each other.

Northwest Potato, 208 Mont. at 317, 678 P.2d at 1141.

We have reviewed and compared both instructions and have concluded that under the facts of this case, the jury could

properly have found for the plaintiff under both instructions. As a result, we hold that the giving of both instructions does not constitute reversible error.

The Bank also objects to the District Court's instruction on the theory of third party beneficiary. The basis for the Bank's objection is that the federal district court found no contract to exist between SBA and the Bank. The Bank argues res judicata on the issue of any contractual relationship between it and the SBA.

First, we find res judicata inapplicable. Res judicata requires the same parties, the same subject matter, the same issues, and the same capacities of the parties. Filler v. Richland County (1991), 247 Mont. 285, 806 P.2d 537. The parties on appeal are C B & F and the Bank. The action in federal court was an action by the Bank against the SBA. The parties are not the same.

Further, the issues involved are different. The Bank argued to the federal court that SBA had breached an agreement with it to subordinate and that this breach caused the Bank damage. In the underlying action now on appeal, C B & F argues that the Bank breached its agreement with C B & F, causing C B & F damage. We conclude that the determination by the federal district court did not constitute res judicata as to the issues in this case.

We note that the transcript does contain the Bank's objection to the third party beneficiary instruction as presented by C B & F. The record also shows that following a discussion on the appropriateness of the theory to the case, the Court granted the Bank's request for permission to write a limiting instruction to be

given with the original. The Bank never furnished the instruction at the agreed upon time so the court gave the original instruction by itself. We conclude that the Bank's failure to provide the instruction, which the court stated that it would give to the jury, prevents the Bank from now arguing that the instruction on this issue was deficient.

We hold the District Court did not err by instructing the jury on an equitable estoppel theory and on a third party beneficiary theory.

Affirmed.

_____
Justice

We Concur:

_____
John Conway Harrison

_____

_____
William E. Hunt

_____
Justices