DA 06-0789

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 343

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

WILLIAM FLYNN LONGFELLOW,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-05-102
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Meghan Lulf Sutton,
          Law Office of Meghan Sutton, Great Falls, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; John
          Paulson, Assistant Attorney General, Helena, Montana

          Brant Light, Cascade County Attorney; Susan Weber and Joel
          Thompson, Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs:  June 11, 2008

Decided:  October 9, 2008

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     William Flynn Longfellow appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, upon a jury verdict convicting him of the felony offense of sexual intercourse without consent.  We affirm.

¶2     The restated issues on appeal are:

¶3     1.  Did the District Court abuse its discretion by determining W.G., a developmentally disabled woman, was competent to testify?

¶4     2.  Did the District Court abuse its discretion by denying the defense's motion for a mistrial based on prosecutorial misconduct?

## BACKGROUND

¶5     The State of Montana charged Longfellow by amended information with the alternative felony charges of sexual intercourse without consent and attempted sexual intercourse without consent.  The State alleged, among other things, that Longfellow digitally penetrated the vagina of W.G., a developmentally disabled woman.

¶6     On Longfellow's motion, the District Court held a pretrial hearing regarding W.G.'s competency to testify.  At the hearing, the court heard testimony from W.G. and other witnesses, and admitted recordings and transcripts of W.G.'s interviews with a police detective and psychologist Dr. Bruce Frumkin into evidence.  The court orally ruled W.G. was competent to testify; it subsequently entered a written order denying the defense's request to disqualify her.  The case proceeded to trial, and W.G. and other witnesses testified.

¶7     The defense objected twice during the prosecution's closing arguments, and the

2

District Court overruled both objections. Immediately after submission of the case to the jury, the defense moved for a mistrial. The District Court denied the motion.

¶8 The jury convicted Longfellow of felony sexual intercourse without consent, and the District Court entered judgment and sentence. Longfellow appeals.

## STANDARDS OF REVIEW

¶9 We review a district court's ruling on witness competency for abuse of discretion. *See State v. Olson*, 286 Mont. 364, 370, 951 P.2d 571, 575 (1997) (citation omitted). We also review a district court's ruling on a motion for a mistrial for abuse of discretion. *See State v. Ferguson*, 2005 MT 343, ¶ 80, 330 Mont. 103, ¶ 80, 126 P.3d 463, ¶ 80 (citations omitted).

## DISCUSSION

¶10 *1. Did the District Court abuse its discretion by determining W.G. was competent to testify?*

¶11 Every person is competent to be a witness except as otherwise provided in the Montana Rules of Evidence. M. R. Evid. 601(a). A person is disqualified to be a witness if the court finds that (1) the person is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand the person or (2) the person is incapable of understanding the duty to tell the truth. *See* M. R. Evid. 601(b).

¶12 At the pretrial hearing, the District Court orally reasoned, among other things, that Longfellow had failed to establish that W.G. was incapable of expression concerning the matter so as to be understood; psychiatrist Dr. William Stratford could not state W.G. did not

3

understand the duty to tell the truth based on Frumkin's report or otherwise; W.G.'s statements "did not seem to be particularly inconsistent as to the basic allegation here"; and W.G.'s interview statements and hearing testimony established she understood her responsibility to tell the truth and the difference between the truth and a lie.  The court also observed the proposition that inconsistencies go to witness credibility rather than competency, and stated that proposition was "not overcome . . . by the consistency issues that have been raised here, her weak IQ and susceptibility to suggestion, the fact that a retarded person would have a less accurate memory are not persuasive [sic]."  Longfellow does not mention any of this reasoning on appeal.

¶13     Acknowledging that determinations of witness credibility are within the province of the jury, Longfellow asserts that W.G.'s statements were inconsistent.  He argues that the consistency of a witness in reporting an event is crucial in determining his or her competency to testify, and advances *State v. A.D.M.*, 216 Mont. 419, 701 P.2d 999 (1985), and *State v. Eiler*, 234 Mont. 38, 762 P.2d 210 (1988), in support of his position.

¶14     In *A.D.M.*, the issue was whether a young girl's testimony was sufficient, without corroboration, to support the defendant's conviction of felony sexual assault.  We observed that Montana law does not require corroboration of a victim's testimony in a sexual assault case.  We then discussed prior cases regarding the competency of child witnesses, determined the girl's testimony was consistent with her prior reports and a psychologist's testimony, and concluded she was competent to testify.  We also stated the defendant's arguments went to the weight or credibility of the testimony.  *A.D.M.*, 216 Mont. at 421, 701

4

P.2d at 1000.

¶15 In *Eiler*, the appellant asserted a child witness was not competent to testify and pointed to her inability to remember certain details of the alleged acts. We cited to *A.D.M.* after concluding the consistency of the child's testimony and reports, along with a doctor's supporting testimony, demonstrated her capacity to remember the occurrence and her ability to relate her impressions. *Eiler*, 234 Mont. at 42-43, 762 P.2d at 213. Noting our prior holding that inconsistencies regarding perception of location do not affect the competency of a witness, we then determined that the rephrasing of questions regarding a timeframe alleviated the child's difficulties in answering. *Eiler*, 234 Mont. at 43, 762 P.2d at 213-14 (citing *State v. Phelps*, 215 Mont. 217, 226, 696 P.2d 447, 453 (1985)). We also stated that inconsistencies go to credibility, a matter decided by the jury. *Eiler*, 234 Mont. at 43, 762 P.2d at 214 (citations omitted).

¶16 Longfellow asserts W.G. was "far less consistent" than the witnesses in *A.D.M.* and *Eiler*, although his discussion of those cases' facts consists of rather scant assertions that the reports and testimony of the witness in each case were consistent and supported by another witness. He also sets forth a number of W.G.'s asserted inconsistencies in the "statement of facts and case" portion of his brief, but presents no developed argument that those inconsistencies—as opposed to the inability of the witness to recall details in *Eiler*—render a witness incompetent to testify. Nor, as mentioned above, does he address the District Court's determination that W.G.'s statements were not particularly inconsistent with respect to the "basic allegation." We agree with Longfellow that W.G.'s statements were not

5

altogether consistent. We reject, however, Longfellow's assertion that these inconsistencies bear on an evidentiary question regarding W.G.'s competency to testify rather than a jury question regarding her credibility.

¶17 Next, Longfellow advances *Olson*, 286 Mont. at 370, 951 P.2d at 575, and that case's citation to *Eiler*, in positing that, to be competent, a witness must understand the duty to tell the truth. In the "statement of facts and case" portion of his brief, Longfellow sets forth some of W.G.'s responses to questions regarding the truth and lies. In his argument, Longfellow points to other such responses and asserts Frumkin was concerned regarding W.G.'s conception of the truth because Frumkin believed W.G. was suggestible and likely to "mirror" statements to please others. Longfellow also asserts W.G. was "coached" and sought to please the female prosecutor in this case.

¶18 The appellant bears the burden of establishing error, and must cite to legal authority to meet that burden. *See State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, ¶ 22, 133 P.3d 206, ¶ 22 (citation omitted). Absent authority or developed argument, we decline to address Longfellow's apparent assertion that Frumkin's opinions regarding suggestibility and mirroring render a witness unable to appreciate the duty to tell the truth or otherwise incompetent. We also conclude, absent argument to the contrary, that some of W.G.'s hearing testimony—that lying is a "[b]ad thing" and her correct responses that certain statements were true and others were lies—are similar to the testimony at issue in *Olson* and *Eiler*, wherein we affirmed district courts' determinations that the witnesses understood the duty to tell the truth. *See Olson*, 286 Mont. at 371, 951 P.2d at 575; *Eiler*, 234 Mont. at 44-

6

45, 762 P.2d at 214-15. Moreover, we observe again that Longfellow totally ignores the District Court's reasoning which, by its terms, addressed these matters.

¶19 We decline to address Longfellow's assertion that W.G. cried as soon as she took the stand and "fell apart" when questioned by defense counsel at the competency hearing, because Longfellow advances no authority suggesting these factors bear on witness competency. *See Hicks*, ¶ 22. We also decline to consider Longfellow's arguments regarding W.G.'s trial testimony in reviewing the District Court's pretrial competency determination. Finally, we do not address Longfellow's Confrontation Clause arguments, in light of our longstanding rule that we generally do not address issues raised for the first time on appeal. *See State v. Rahn*, 2008 MT 201, ¶ 22, 344 Mont. 110, ¶ 22, 187 P.3d 622, ¶ 22 (citation omitted).

¶20 We hold the District Court did not abuse its discretion in determining W.G. was competent to testify.

¶21 *2. Did the District Court abuse its discretion by denying the defense's motion for a mistrial based on prosecutorial misconduct?*

¶22 Toward the end of the State's initial closing argument, the following exchange occurred between the prosecutor, defense counsel and the trial court:

MS. WEBER: The defendant's case is based purely on speculation and trickery. They [apparently referring to defense counsel and Frumkin] have shown very succinctly that they can trick a retarded girl.

MR. VAN DER HAGEN: Your Honor, I'm objecting at this point; that's inappropriate and also that violates due process clause of the constitution and federal constitution.

MS. WEBER: It's argument, Your Honor.

7

THE COURT:  Overrule the objection.

MS. WEBER:  Thank you.  They can trick a retarded girl.  Now they have to trick you.

The defense objected again during the prosecution's rebuttal closing argument:

MS. WEBER:  Their entire defense is based upon the experts that you heard testify.  You saw how vulnerable [W.G.] was on that witness stand.  They tried to trick her.  They tried to confuse her.  They tried to take advantage of her disabilities just like the defendant did on March 3rd of 2005.  And, again, the only suggestions that were made were those from Mr. van der Hagen and Dr. Frumkin.

The reason the defendant picked [W.G.] as his victim is the same reason they are claiming she can't be believed; she's retarded.  You can't believe her, she's retarded.  Reject that, ladies and gentlemen.  Reject it outright.  Don't let them get away with it.  Don't allow this type of a defense to be effective in our town.  Send a message to everyone out there that all the members of our community—

MR. VAN DER HAGEN:  Your Honor, I object to this.

THE COURT:  Overruled.

MS. WEBER:  —mentally retarded, physically handicapped or otherwise will be protected.  I'm confident that you will do the right thing, that you will do what's just, that you will make the only decision that fits the facts and the law.  I'm confident that you will find William Longfellow guilty.

¶23   Immediately after the jury was excused to deliberate, defense counsel moved for a mistrial:

MR. VAN DER HAGEN:  Your Honor, I move for a mistrial based on the statements of counsel's made [sic] using trickery.  I think that, that's an inappropriate comment on counsel, violates the due process clause of the Montana Constitution, the Federal Constitution.  I think it's also reversible error and I think she also went over the top when she charged them to send a message to the community.  I think that's grounds for a mistrial.

THE COURT:  Miss Weber.

MS. WEBER: Your Honor, this was all in argument. We're entitled to argue the facts that have been presented to the jury. The facts that were presented is that whatever suggestion that he want [sic] to talk about came through Mr. van der Hagen and the doctor from Florida and I was simply arguing that. I'm allowed to use the wording that I think is appropriate. And I believe that trickery is absolutely appropriate under the circumstances and we have every right to charge the jury to do what is right under the law based upon the facts that they've been given.

THE COURT: All right. Motion is denied. We're in recess.

¶24 In addition to the statements set forth above, Longfellow discusses other aspects of the prosecutor's conduct, including objections posed during the defense's cross-examination of W.G. and statements during closing arguments to which defense counsel did not object. Longfellow advances no authority for the proposition that an objection may constitute prosecutorial misconduct; thus, we do not address his objection-related assertions. *See Hicks*, ¶ 22. Moreover, while we consider an allegedly improper statement in the context of the entire closing argument, *State v. Roubideaux*, 2005 MT 324, ¶ 15, 329 Mont. 521, ¶ 15, 125 P.3d 1114, ¶ 15 (citations omitted), we generally do not address issues of prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial. *See State v. Racz*, 2007 MT 244, ¶ 36, 339 Mont. 218, ¶ 36, 168 P.3d 685, ¶ 36. Indeed, we have only once granted a party's request for plain error review of a prosecutorial misconduct issue, and we have no such request before us here. *See State v. Hayden*, 2008 MT 274, ¶¶ 29-33, 345 Mont. 252, ¶¶ 29-33, 190 P.3d 1091, ¶¶ 29-33. Thus, we do not address as stand-alone arguments Longfellow's assertions regarding matters other than the statements during closing arguments to which the defense objected at trial.

¶25 Prosecutorial misconduct is determined by reference to established norms of professional conduct. To demonstrate the trial court abused its discretion in denying a motion for a mistrial based on alleged prosecutorial misconduct, the defendant must show that the prosecutor engaged in misconduct and that the prosecutorial misconduct violated his substantial rights; this Court will not presume prejudice. *See State v. Duffy*, 2000 MT 186, ¶ 35, 300 Mont. 381, ¶ 35, 6 P.3d 453, ¶ 35 (citations omitted).

¶26 With respect to whether the prosecutor engaged in misconduct, Longfellow acknowledges a prosecutor may comment during closing argument on conflicts and contradictions in testimony, and may comment on the evidence and suggest reasonable inferences the jury may draw from the evidence. *See e.g. State v. Raugust*, 2000 MT 146, ¶ 43, 300 Mont. 54, ¶ 43, 3 P.3d 115, ¶ 43 (citation omitted). He asserts, however, that we strongly disapproved of prosecutors' characterizations of witness testimony as untruthful in *Ferguson*, ¶ 82, and *State v. Arlington*, 265 Mont. 127, 157-58, 875 P.2d 307, 325 (1994). He also argues that the prosecutor violated Rule 3.4(e) of the Montana Rules of Professional Conduct, which states in part that a lawyer shall not "in trial . . . state a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of an accused." Longfellow asserts the prosecutor played to the jurors' sympathies and advanced the justness of the cause by calling on them to "send a message" and stating she was confident the jurors would do what was "just."

¶27 The State responds that the prosecutor's "trickery" remarks may properly be characterized as comments on the evidence and reasonable inferences the jury could make

from the evidence. It also asserts, based on federal cases, that the "send a message" remark was a proper appeal to the jury to act as the conscience of the community because it was an isolated remark that was not designed to inflame the jury. In addition, the State asserts the "send a message" remark was consistent with the District Court's jury instruction that the jury was not to be governed by sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

¶28 It is not entirely clear whether Longfellow advances the "comments on untruthfulness" portions of *Ferguson* and *Arlington* in relation to the prosecutor's "trickery" remarks, as opposed to her other comments made without objection—which, as discussed above, we do not address. In any event, the record reflects that, in an apparent attempt to demonstrate W.G.'s suggestibility, both Frumkin's pretrial interview and defense counsel's cross-examination of W.G. at trial included questions positing incorrect facts, to which W.G. sometimes responded affirmatively. On this record and absent developed argument, we are not convinced that the prosecutor's "trickery" remarks necessarily related to the truthfulness of any witness. With regard to the "send a message" and "just" remarks, Longfellow's only relevant authority is the above-mentioned Rule 3.4(e) and, having failed to file a reply brief, he does not address the State's arguments or federal authorities to the effect that "send a message" comments and appeals to act as the conscience of the community are not improper. We conclude Longfellow has not established the prosecutor engaged in misconduct; thus, we need not address his assertions of prejudice. *See Duffy*, ¶ 35.

¶29 We hold Longfellow has failed to establish an abuse of discretion in the District

11

Court's denial of his motion for a mistrial based on prosecutorial misconduct.

¶30    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS