FILED

June 2 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0859

DA 13-0859

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 152N

SUPERIOR AUTO BODY AND TOW, INC.,

      Plaintiff and Appellee,

  v.

MICHAEL YEAGER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. BDV-13-740
                    Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Michael Yeager (self-represented); Great Falls, Montana

      For Appellee:

            Mark F. Higgins, Andrew T. Newcomer, Ugrin, Alexander, Zadick &
            Higgins, P.C.; Great Falls, Montana

      For Amicus Curiae Montana Tow Truck Association, LTD:

            John M. Semmens, Jackson, Murdo & Grant, P.C.; Helena, Montana

                         Submitted on Briefs:  March 18, 2015
                                   Decided:  June 2, 2015

Filed:

                                          Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by unpublished opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Michael Yeager appeals the judgment of the Eighth Judicial District Court, Cascade County, which ordered the Cascade County Sheriff to sell Yeager's 2003 Aston Martin Vanquish to satisfy a $9,766 debt owed by Yeager to Superior Auto Body (Superior) for storage of the car. We affirm.

¶3     On February 12, 2009, Yeager brought his totaled 2003 Aston Martin Vanquish to Superior with the intent of having Superior repair it. The car was delivered near closing time. In order to unload the car, Superior had to rent a front end-loader and keep four or five employees past closing. Superior incurred $750 in expenses unloading the car. The car was placed in Superior's heated garage.

¶4     Throughout 2009, Yeager stopped by Superior every few months, and advised that he was looking for parts for the car. In May 2009, Superior told Yeager that it had a list of parts needed to restore the car but Yeager would have to pay up front if he wanted Superior to order the parts. Superior repeatedly advised Yeager that it needed to begin working on the project soon, or Superior would charge him storage fees. Eventually, Yeager stopped coming into the shop. Superior called Yeager and sent him certified

2

letters, but could not get in contact with him. On July 6, 2012, Superior sent Yeager a bill for storage fees by certified mail which came back undelivered.

¶5 In January 2013, Superior began remodeling its shop, and Yeager's car was moved outside to complete the remodeling. Superior covered the car with foam, blankets, and a tarp to protect it from possible hail damage. Yeager came back into the shop in April 2013, and he was advised that he needed to authorize repairs or remove the car and pay storage fees. On August 13, 2013, Superior sent Yeager a second bill, at Yeager's request, which itemized $14,366 worth of storage fees and labor expenses. Yeager testified that he sent Superior $350, the amount he believed the initial unloading of the car was worth, but he paid no other portion of the bill.

¶6 On September 25, 2013, Superior filed a lien enforcement action in the District Court, asking that the car be sold at a sheriff's sale to satisfy the debt owed to Superior pursuant to § 71-3-1201, MCA. A show-cause hearing was held on October 29, 2013, and continued until November 26, 2013. At the conclusion of the November 26, 2013 hearing, the District Court ruled that Yeager owed Superior $9,766 in storage fees and labor expenses. Yeager was allowed one week to satisfy the debt and remove the vehicle from Superior's property to prevent the sale. Yeager paid Superior $9,766 and reclaimed the car. Superior filed a satisfaction of judgment on January 2, 2014. Yeager appeals.

¶7 We review a district court's conclusions of law to determine whether they are correct. We review a district court's findings of fact to determine whether they are clearly erroneous. A finding of fact may be clearly erroneous if it is not supported by substantial evidence in the record, if the district court misapprehended the evidence, or

3

when our review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *State v. Pound*, 2014 MT 143, ¶ 18, 375 Mont. 241, 326 P.3d 422.

¶8 Montana's agister's lien statute, § 71-3-1201(2)(a), MCA, provides in pertinent part:

> A person who, while lawfully in possession of an article of personal property, renders any service to the owner or lawful claimant of the article by labor or skill employed for the . . . *storage of the article* or tows or stores the article as directed under authority of law has a special lien on the article.

Section 71-3-1201(2)(a), MCA (emphasis added). The statute specifically addresses expenses for towing and storage: "If the service is towing or storage, the lien is for the reasonable cost of the towing or storage." Section 71-3-1201(2)(a), MCA. The statute expressly applies to motor vehicles. Section 71-3-1201(2)(b), MCA.

¶9 A contract, express or implied, is necessary for the formation and enforcement of an agister's lien. *Engle v. Pfister*, 127 Mont. 65, 70, 257 P.2d 561, 563 (1953). "An implied contract is one the existence and terms of which are manifested by conduct." Section 28-2-103, MCA. "The elements required to establish an implied contract are: identifiable parties, consent, a lawful object and consideration." *C B & F Dev. Corp. v. Culbertson State Bank*, 256 Mont. 1, 6, 844 P.2d 85, 88 (1992).

¶10 Yeager argues that there was no "implied contract" for storage between the parties, and therefore no valid agister's lien was created. This argument is without merit. Yeager left his car in Superior's heated garage for repairs, and he did not remove the car from Superior's property for over four years despite repeated warnings from Superior that

4

he would be charged storage fees. Although the repairs never occurred due to Yeager's failure to pay, Superior did provide services to the car—storage—for which it is entitled to reasonable compensation under § 71-3-1201(2)(a), MCA.

¶11 Yeager also asserts that the Statute of Frauds prevented the formation of an "implied contract" because the contract had to be in writing to be enforceable. Under the Statute of Frauds, "an agreement that by its terms is not to be performed within a year from the making of the agreement" must be in writing. Section 28-2-903(1)(a), MCA. "However, courts have uniformly construed this provision narrowly. If there is any possibility that a contract may be performed within one year, it is not within the statute." *Beaverhead Bar Supply v. Harrington*, 247 Mont. 117, 123, 805 P.2d 560, 563 (1991). The agreement for storage and repair of Yeager's car could have been completed within one year, and it contained no time limit. The Statute of Frauds does not apply.

¶12 Yeager next argues that he was entitled to a jury trial in the lien enforcement action. This is incorrect. Section 71-3-1203, MCA, repeatedly refers to the role of the "court" in determining the action. There is no right to a jury where the plain language of the statute does not contemplate the role of a jury. *Supola v. Montana DOJ, Drivers License Bureau*, 278 Mont. 421, 424, 925 P.2d 480, 481 (1996). Article II, Section 26 of the Montana Constitution only guarantees the right to a jury trial in the class of cases in which the right was enjoyed when the constitution was adopted in 1972. There is not, and never has been, a right to a jury trial in purely equitable actions in Montana. *Supola*, 278 Mont. at 424–25, 925 P.2d at 482. A lien enforcement proceeding is equitable in nature. *See Union Bank & Trust Co. v. Wieck*, 96 Mont. 132, 136, 29 P.2d 384, 385

5

(1934) ("An action to foreclose a mortgage is one in equity, and neither party is entitled to a jury trial.").

¶13 Yeager asserts various constitutional challenges to Montana's agister's lien laws, none of which were raised in the District Court. We generally do not address issues raised for the first time on appeal. *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694. However, we will review an unpreserved error when there is an alleged violation of a fundamental right by the district court, such as equal protection of the laws and civil due process. *Halldorson v. Halldorson*, 175 Mont. 170, 173–74, 573 P.2d 169, 171–72 (1977). Yeager alleges a violation of his constitutional right to equal protection. "When analyzing an equal protection claim, the Court follows a three-step process: (1) identify the classes involved and determine if they are similarly situated; (2) determine the appropriate level of scrutiny to apply to the challenged legislation; and (3) apply the appropriate level of scrutiny to the challenged statute." *Goble v. Mont. State Fund*, 2014 MT 99, ¶ 28, 374 Mont. 453, 325 P.3d 1211. Yeager has failed to identify a similarly situated class which has been treated differently than his own class under the agister's lien statute, § 71-3-1203, MCA. Therefore, his equal protection claim fails. *State v. Ellis*, 2007 MT 210, ¶ 21, 339 Mont. 14, 167 P.3d 896.

¶14 Yeager alleges that his due process rights were violated. Civil due process requires that a party receive notice and be allowed the opportunity to be heard. *In re T.C.*, 2001 MT 264, ¶ 22, 307 Mont. 244, 37 P.3d 70 (citing *Byrd v. Columbia Falls Lions Club*, 183 Mont. 330, 332, 599 P.2d 366, 367 (1979)). "[N]otice must be reasonably calculated, under the circumstances, to apprise the interested parties of the

6

pendency of the action and afford them an opportunity to present their objections." *Byrd*, 183 Mont. at 332, 599 P.2d at 367.

¶15 In this case, the District Court followed the procedures outlined in § 71-3-1203, MCA. The procedures did not violate Yeager's due process rights. On September 25, 2013, Superior filed an affidavit outlining its interest in the car pursuant to § 71-3-1203(2), MCA, and the next day the District Court ordered Yeager to show cause why the lien should not be enforced under § 71-3-1203(3)(a), MCA. Yeager was served with the order on October 9, 2013, which was more than five days before the original October 15, 2013 hearing date, as required by § 71-3-1203(3)(b), MCA. The District Court granted Yeager's motion to postpone the show-cause hearing. The October 29, 2013 hearing was then continued, largely due to Yeager's testimony, until November 26, 2013. The procedures prescribed by § 71-3-1203, MCA—which the District Court followed—afforded Yeager adequate notice of the lien enforcement action and ample opportunity to be heard.

¶16 Yeager argues that it was error for the District Court not to address counter-claims which he raised in a separate suit against Superior—Cause No. ADV-13-816—which he filed the morning of the show-cause hearing on the lien enforcement action. Yeager also filed a motion to consolidate the two actions. At the show-cause hearing, the District Court held that Yeager's claims in Cause No. ADV-13-816—including conversion, deceit, intentional infliction of emotional distress, and breach of the covenants of good faith and fair dealing—did not apply to the lien enforcement action then before it. We agree. The District Court did not abuse its discretion by declining to consolidate the

7

actions. *Envtl. Contrs., LLC v. Moon*, 1999 MT 178, ¶ 32, 295 Mont. 268, 983 P.2d 390 ("We review a district court's denial of a motion to consolidate for an abuse of discretion.").

¶17 Finally, Yeager argues the District Court erred by forcing him to rest his case at the November 26, 2013 hearing, and by not allowing him to bring in new evidence from prior, presumably dissatisfied, customers of Superior. We note that the District Court continued the first show-cause hearing because of Yeager's testimony, which took up the majority of the time allotted. At the continuation of the hearing on November 26, 2013, the District Court allowed Yeager to call a new witness, James Campbell, to testify on his behalf. Contrary to his assertions, Yeager was not "forced" to rest his case. The District Court properly excluded evidence from other Superior customers under M. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct, and its findings of fact are not clearly erroneous. The District Court also did not abuse its discretion in any matters of trial administration.

¶19 Affirmed.

/S/ JAMES JEREMIAH SHEA

8

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER