FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0578

DA 14-0578

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 188N

BARBARA FLETCHER and SCOTT
FLETCHER, individually, and as Park
County Citizens and Taxpayers,

      Plaintiffs and Appellants,

   v.

PARK COUNTY, a political subdivision
of the STATE OF MONTANA,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
                In and For the County of Park, Cause No. DV 12-175
                Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Courtney Lawellin, Attorney at Law, Livingston, Montana

      For Appellee:

          Shannon Piccolo, Park County Attorney, Kendra K. Anderson, Deputy
          County Attorney, Livingston, Montana

                              Submitted on Briefs: March 25, 2015
                                    Decided: June 30, 2015

Filed:

                                        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Barbara and Scott Fletcher appeal the findings of fact, conclusions of law, and order of the Sixth Judicial District Court, Park County, which denied their claims against Park County for construction of a bridge located on Wood Family Trust Property.  The bridge provides access to the Fletchers' personal residence.

¶3     The Fletchers live on a parcel of land that was deeded to Barbara by her parents, the Woods, located in Park County (the County).  Barbara conveyed the property to herself and her husband, Scott, as joint tenants.  Both Peterson Creek and Greely Creek flow through the Fletchers' property.  The property conveyance included a recorded easement which provided access to the property via a gravel road located north and east of Peterson Creek.  The easement provided:

> [E]asement for access and egress along the existing graveled road lying east and north of Peterson Creek, extending from the intersection of said road with the frontage road on the south side of Interstate Highway No. 90, to and including the portion of said road lying adjacent to the north boundary of this tract.  Said access extending through portion of the northwest and southwest quarters of Section 5 [sic].

Notwithstanding the express easement, in 2011 the Fletchers had been accessing their land and residence via a private drive located south and west of Peterson Creek, through Wood Family Trust Property.  At the point where Peterson Creek intersected with the private drive

2

(the Peterson Creek Crossing), the creek flowed through a culvert. The Fletchers do not have recorded legal access to the private drive; however, they have permission of Alberta Wood—Barbara's mother and trustee of the Wood Family Trust Property—to use the private drive.

¶4 On May 24, 2011, Peterson Creek and Greely Creek flooded, re-routing Peterson Creek and washing out the culvert at the Peterson Creek Crossing. The Fletchers sued their neighbors, Bassett and Susan Hoiness, alleging that the Hoiness' negligence caused Peterson Creek to flood. On June 7, 2011, the Park County Commissioners met with individuals affected by the flood, including the Fletchers, Roy Wood (Barbara's brother and lessee of the Wood Family Trust Property), and Bassett Hoiness. Hoiness agreed that he would hire contractors to install a new culvert on the private drive so the Fletchers could access their property as they had previously. Hoiness and Alberta Wood paid for the culvert's installation. The County applied for the proper permits. The culvert installation did not meet the permit requirements of Montana Fish, Wildlife, and Parks, and it violated U.S. Army Corp of Engineers (ACOE) regulations.

¶5 Facing possible fines from ACOE for the culvert installation, and operating under the mistaken belief that the private drive was the Fletchers' only legal access to their property, the County decided to remove the culvert and remediate the Peterson Creek Crossing. Although the Fletchers had previously told the County that they planned to remediate the Peterson Creek Crossing themselves, they never applied for any of the required permits or took any action in that regard.

¶6     The Park County Commission has regular meetings that are noticed as "County Road Update/Engineering Services Updates" (Update Meetings).  At the meetings, information is shared by staff and professional services contractors about County roads, crossings, and bridge replacements.  In August and September 2012, the Commission discussed hiring CTA Architects Engineers to construct a bridge at the Peterson Creek Crossing.

¶7     On September 20, 2012, the County Commission held an Update Meeting to discuss plans for the Peterson Creek Crossing.  Barbara attended the meeting and provided suggestions for the bridge's design.  Because her brother, Roy, would be using the bridge for agricultural purposes, Barbara suggested that the bridge should have a surface upon which cows could cross, and the bridge should not have a guardrail so that Roy could drive agricultural equipment across it.  At the meeting, the Commission moved to allow CTA Architects Engineers to begin bridge designs, construction plans, and permitting coordination.  After the September 20 meeting, CTA engineer Kevin Feldman met with the Fletchers and Roy to discuss their wishes and needs regarding the bridge's design and construction.

¶8     The County held another noticed Update Meeting on October 2, 2012.  The agenda for the meeting did not specifically list the Peterson Creek Crossing.  During the meeting, the Commission directed Feldman, who appeared via phone, to be certain the Peterson Creek Crossing bridge met the ACOE's requirements.  The Commission also asked Feldman to look into prices for putting in the pile driving and setting the beams for the bridge.  No votes were taken or final plans made regarding the bridge at this meeting.  An audio recording was kept of the entire October 2, 2012 meeting.  The written meeting minutes did not mention the

Peterson Creek Crossing, nor did the written minutes include a number of other minor projects discussed at the meeting.

¶9 On October 8, 2012, Feldman called Roy and the Fletchers and advised them that permitting-level bridge plans were ready for their review, and the plans would be discussed at the October 9, 2012 Update Meeting. On October 9, 2012, Feldman met with Alberta and Roy to review the plans for the bridge. Alberta found no problems with the plans, and she expressly consented to construction of the bridge as trustee of the Wood Family Trust Property. Also on October 9, 2012, Feldman spoke with Barbara and advised her that the plans were available for her review at the CTA office. The Fletchers neither went to the CTA office, nor met with Feldman to review the plans.

¶10 On October 18, 2012, the Commission held an Update Meeting to discuss the Peterson Creek Crossing. Barbara was invited to the meeting via e-mail. At the meeting, Barbara expressed concerns about the bridge, particularly about drifting snow. The Commission nonetheless voted to move forward with the project in accordance with CTA's plans.

¶11 On October 22, 2012, the Fletchers filed suit against Park County alleging negligent design of the proposed bridge and requesting injunctive relief to prevent construction of the bridge. Neither Alberta nor Roy joined the Fletchers in this action. On March 12, 2013, the Fletchers filed an amended complaint to include violations of their rights to know and participate under Article II, Sections 8 and 9 of the Montana Constitution, and violations of the codifications of those sections in Title 2, chapter 3 of the Montana Code Annotated.

¶12	The District Court held a bench trial June 24-27, 2013. During the trial, the District Court visited the property with counsel of record and viewed the bridge, the adjacent roads, and the perimeter of the Fletchers' property. On August 18, 2014, the District Court issued its findings of fact, conclusions of law, and order. The District Court ruled in favor of the County on the issues of notice of the public meetings, held that the Fletchers' negligence claim failed for lack of standing, and held that the claim was meritless in any event. The District Court ordered the parties to pay their own attorney fees, and ordered the Fletchers to pay costs.

¶13	We review a district court's findings of fact to determine if they are clearly erroneous. *Watson v. Dundas*, 2006 MT 104, ¶ 17, 332 Mont. 164, 136 P.3d 973. A district court's findings are clearly erroneous if the findings are not supported by substantial evidence in the record, or the district court has misapprehended the effect of the evidence. *Watson*, ¶ 17. The Court may still determine that the trial court's findings are clearly erroneous when, although evidence supports it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Watson*, ¶ 17. We review a district court's conclusions of law for correctness. *Watson*, ¶ 17.

¶14	Fletchers argue that they were not provided proper notice of the County's meetings, in violation of Fletchers' right of participation, Mont. Const. art. II, § 8, their right to know, Mont. Const. art. II, § 9, and the codification of these sections found in Title 2, chapter 3 of the Montana Code Annotated. Agencies must develop procedures to permit and encourage public participation in their decisions and provide "adequate notice and assist public participation before a final agency action is taken that is of significant interest to the public."

6

Section 2-3-103(1)(a), MCA. "The provisions of § 2-3-103(1), MCA, are only triggered when action is being taken on an issue of significant public interest." *Jones v. Cnty. of Missoula*, 2006 MT 2, ¶ 14, 330 Mont. 205, 127 P.3d 406.

¶15 The Fletchers contend that the County failed to give adequate notice of the October 2, 2012 meeting as required by § 2-3-103(1)(a), MCA, and the County kept inaccurate meeting minutes in violation of § 2-3-212(1)(a), MCA. The determination of whether an issue is a matter of significant public interest is the threshold issue for the applicability of Title 2, ch. 3. Section 2-3-103, MCA; *Jones*, ¶ 14. In this case, the District Court determined that the construction of a small bridge on private property with limited use is not a matter of significant public interest. We agree. The requirements of Title 2, ch. 3 do not apply to this issue; therefore, the Fletchers' arguments that the County failed to comply with § 2-3-103(1)(a), MCA, and § 2-3-212, MCA, are unavailing.

¶16 Fletchers assert that they had standing to bring a negligence claim against the County. "The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute." *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 30, 360 Mont. 207, 255 P.3d 80. To have standing, "the plaintiff must clearly allege a past, present, or threatened injury to a property or civil right." *Heffernan*, ¶ 33. The District Court correctly determined that the Fletchers have no property right in the Peterson Creek Crossing which would afford them standing to bring a negligence claim against the County. The Peterson Creek Crossing is located on Wood Family Trust Property. The Fletchers' deeded easement to access their property does not include the Peterson Creek Crossing. The permission from Alberta to use the Peterson Creek Crossing does not create a legal interest in the property

allowing the Fletchers to assert a claim for negligence against the County. Because the Fletchers do not have standing to challenge the design and construction of the bridge, we do not address the Fletchers' negligence claims.

¶17 The Fletchers claim a property interest in the Peterson Creek Crossing by way of an easement by necessity. The two elements of an easement by necessity are unity of ownership and strict necessity. Thus, an easement by necessity exists when the owner of a tract of land sells a part of the tract that has no outlet to a public road except over the other lands of the seller. *Watson*, ¶ 32. Here, the Fletchers' property meets the unity of ownership test; however, it fails the "strict necessity" requirement. "Strict necessity means a lack of practical access to a public road for ingress and egress." *Watson*, ¶ 32. The Fletchers recorded easement to their property allows them access to Peterson Creek Road, a county road; therefore, the Fletchers do not have an easement by necessity at the Peterson Creek Crossing.

¶18 The Fletchers also argue that (1) the bridge is a public highway, (2) the District Court did not have the authority to determine the location of Peterson Creek Road, and (3) the County owed them a duty of care. The Fletchers did not raise the issue of a public highway below, and we will not address it here. *See State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694 ("[W]e generally do not address issues raised for the first time on appeal."). The Fletchers did not object to the location of Peterson Creek Road at trial, and "[w]e have repeatedly held that we will not put a trial court in error for a ruling or procedure in which a party acquiesced or participated." *State v. Cybulski*, 2009 MT 70, ¶ 61, 349 Mont. 429, 204 P.3d 7. The Fletchers assert that the County owes them a duty of care

8

without citation to any authority in support of this assertion. This Court will not conduct legal research to support a party's argument. *Cybulski*, ¶ 13.

¶19 On cross-appeal, the County argues that it is entitled to attorney fees. "Montana follows the American Rule, under which a party in a civil action generally is not entitled to attorneys' fees absent a specific contractual or statutory provision." *Motta v. Granite Cnty Comm'rs*, 2013 MT 172, ¶ 28, 370 Mont. 469, 304 P.3d 720. However, a district court may use its equitable powers to grant complete relief, including an award of attorney fees absent specific statutory authority. *Foy v. Anderson*, 176 Mont. 507, 511, 580 P.2d 114, 116-17 (1978). Such an award of attorney fees "must be determined on a case by case basis." *Foy*, 176 Mont. at 511, 580 P.2d at 117. The *Foy* exception has been narrowly drawn; the exception only applies to cases with particularly limited facts. *Erker v. Kester*, 1999 MT 231, ¶ 44, 296 Mont. 123, 988 P.2d 1221. "This equitable exception to the general rule is available in those unique factual situations in which a party is forced into a frivolouslawsuit and must incur attorney's fees to dismiss the claim." *Goodover v. Lindey's*, 255 Mont. 430, 447, 843 P.2d 765, 775 (1992). "Furthermore, if the losing party had a reasonable basis to believe his cause might prevail, the *Foy* exception is inapplicable." *Goodover*, 255 Mont. at 447, 843 P.2d at 776.

¶20 The County likens its situation here to *Motta*, in which we upheld an award of attorney fees to Granite County absent specific statutory authority for such an award. *Motta*, ¶¶ 28-32. In *Motta*, the District Court specifically found that Motta's actions were "frivolous." *Motta*, ¶ 21. Specifically, Motta pursued his action despite well-settled controlling law that rendered his claim meritless. *Motta*, ¶ 21. Here, although the Fletchers

have filed other lawsuits related to the flood events, the District Court did not make substantive findings about the frivolous or meritless nature of the Fletchers' litigation to support an award of attorney fees under the *Foy* exception. *Motta*, ¶ 30.

¶21 Furthermore, the County went much further into litigation than simply hiring counsel to have the claim dismissed. *Goodover*, 255 Mont. at 447, 843 P.2d at 775. And this was not a case of limited facts, *Erker*, ¶ 44; both the Fletchers' and the County's motions for summary judgment were denied because sufficient issues of material fact were raised. At this juncture, we agree with the District Court that the *Foy* exception does not apply.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct, and the District Court's findings of fact are not clearly erroneous. Affirmed.


/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE