No. 04-097

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 324

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

TOMMY LEE ROUBIDEAUX,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADC 2003-372,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender Office, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

          Brant Light, Cascade County Attorney; Joel Thompson, Cascade Assistant
County Attorney, Great Falls, Montana

                Submitted on Briefs:  May 11, 2005

                       Decided:  December 20, 2005

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      Tommy Lee Roubideaux (Roubideaux) appeals from a decision by the Eighth Judicial District, Cascade County.  We affirm.

¶2      We re-state and address the following issue on appeal: Must Roubideaux's conviction be overturned because during closing argument the prosecutor improperly told the jury that the State did not have to prove his guilt beyond a reasonable doubt?

¶3      Roubideaux was charged with partner assault for hitting Vivian Mondragon (Mondragon) in the face.  Roubideaux and Mondragon had been in a relationship for about a year and a half at the time of the incident and had also shared an apartment in Great Falls. This arrangement ended when Mondragon accused Roubideaux of cheating on her and told Roubideaux not to return to the apartment.

¶4      On the afternoon of the assault, Mondragon saw Roubideaux walking with another woman.  Mondragon then told Roubideaux that she had a new boyfriend.  Afterwards, Mondragon went to a friend's house and then a bar.  She had left the door to her apartment unlocked.  She returned to her apartment around 1:30 a.m.

¶5      Roubideaux testified at trial.  He said that after seeing Mondragon, he walked the other woman to her house and then left for Mondragon's apartment.  He claimed that on the way there he was assaulted by three juveniles, that he suffered a bloody nose and got blood on his face and shirt.  When Roubideaux arrived at Mondragon's apartment and found the door unlocked, he went in.  From this point on, Roubideaux and Mondragon disagree on what occurred.

¶6      According to Roubideaux, Mondragon came home drunk with blood on her lip.  She

2

began yelling and cussing at him, accusing him of having an affair with the woman she had seen him with earlier. She said he had no right to be in the apartment. An argument ensued that was loud enough that the downstairs neighbor yelled that he was going to call the police. According to Roubideaux, the argument ended when he put his arm around Mondragon and apologized. Then, according to Roubideaux, they sat on the bed, began kissing, and had sex. He says Mondragon then got up to go to the bathroom across the hall. Police officers arrived soon after and arrested Roubideaux.

¶7 According to Mondragon, she did not expect to find Roubideaux at the apartment. He punched her in the mouth as soon as she opened the door. After getting hit, Mondragon bled from the lip and cussed at Roubideaux. Mondragon denied having sex with Roubideaux. According to Mondragon, she tried to calm him down and only kissed him a couple of times until they both fell asleep. When she awoke, she left the apartment and went to her landlord, who called the police.

¶8 According to the police officers who responded to the call, Mondragon was crying and upset when they arrived. One of the officers said that Roubideaux was intoxicated. Another officer said that Roubideaux had a black left eye and a cut on his lip.

¶9 The prosecutor's closing argument began:

> PROSECUTOR: Thank you, Your Honor. Let me start by saying there are two kinds of cases that are brought before the Court when I prosecute. There are those cases in which me, as the State of Montana, as the plaintiff, must convince a jury of a fact beyond a reasonable doubt. And very often times that involves the defendant sitting at counsel table and not testifying as it is his or her right to do. They simply say the State hasn't proven its case. And I say, yes, we have. Here is what should convince you of all the facts. So I have to go over that burden to convince you.
> Now the other case is where the defense puts up [a]n alternate theory.

3

And that, ladies and gentlemen, is what we have here today. We have got two stories which I believe and I submit to you makes it easier for you to decide this case.

So no longer do you have to decide whether the State's evidence, the two officers and Miss Mondragon's testimony is enough to convince you of what happened, but instead, since the defendant chose to get up on the stand and give you a story that's contradictory to their testimony, now all you have to do is decide who is telling the truth.

DEFENSE COUNSEL: Your Honor, I am going to object to this if Mr. Thompson is suggesting the State doesn't have to prove this case beyond a reasonable doubt.

PROSECUTOR: Well, of course I do.

THE COURT: Overruled. This is summation. I think he is getting into it.

DEFENSE COUNSEL: Thank you, Your Honor.

PROSECUTOR: So, yes, I have to show you, and you have to decide whether I proved the elements of the case beyond a reasonable doubt.

¶10 The jury found Roubideaux guilty of Partner or Family Member Assault, and he was sentenced to five years in the Montana State Prison. This appeal followed.

¶11 This Court measures prosecutorial misconduct by reference to established norms of professional conduct. *Clausell v. State*, 2005 MT 33, ¶ 10, 326 Mont. 63, ¶ 10, 106 P.3d 1175, ¶ 10. This Court will not presume prejudice from charges of prosecutorial conduct; rather, the defendant must show that the alleged prosecutorial misconduct violated the defendant's substantial rights. *State v. Martin*, 2001 MT 83, ¶ 63, 305 Mont. 123, ¶ 63, 23 P.3d 216, ¶ 63.

¶12 Roubideaux argues that the prosecutor's statement violated his due process rights under the 5th and 14th Amendments to the United States Constitution, as well as under Article II, Section 17 of the Montana Constitution, because it shifted the burden of proof from the

4

prosecution to the defense, and required him to prove that he was telling the truth, rather than requiring the prosecution to prove his guilt beyond a reasonable doubt. Roubideaux argues that this statement, that the jury simply had to decide who was telling the truth, could only be interpreted by a reasonable juror as meaning that the State no longer had to meet its burden of proof beyond a reasonable doubt. Roubideaux analogizes the prosecutor's statements to other cases involving prosecutorial misconduct during closing argument. *See State v. Stewart*, 2000 MT 379, 303 Mont. 507, 16 P.3d 391; *State v. Gladue*, 1999 MT 1, 293 Mont. 1, 972 P.2d 827; *Gore v. State* (Fla. 1998), 719 So.2d 1197; *People v. Adams* (Ill. Ct. App. 1996), 666 N.E.2d 769.

¶13    However, in none of the cases cited by Roubideaux did the offending prosecutor immediately re-affirm the State's obligation to prove its case. In this case the prosecutor, right after making the allegedly improper statement, explicitly stated the correct burden of proof.

¶14    Roubideaux's counsel cannot be faulted for making a objection as soon as she felt it was necessary. However, the objection itself is made only "if" the prosecutor meant to suggest "the State doesn't have to prove this case beyond a reasonable doubt." And, in response, the prosecutor immediately affirmed that he "of course" had to meet the State's burden of proof. In overruling the objection, the District Judge acknowledged that the prosecutor had not had the opportunity to finish making his point prior to the objection. Then, immediately, the prosecutor stated the correct burden of proof.

¶15    This Court will consider an alleged improper statement during closing argument in the context of the entire closing argument. *See State v. Miller*, 1998 MT 177, ¶ 37, 290

5

Mont. 97, ¶ 37, 966 P.2d 721, ¶ 37; *State v. Hart* (1981), 191 Mont. 375, 384, 625 P.2d 21, 26. When the statement Roubideaux complains about is taken in context, and where the prosecutor clearly stated to the jury that they needed to decide if he had "proved the elements of the case beyond a reasonable doubt," such statement did not shift the burden of proof and deny Roubideaux a fair trial.

¶16    Since the prosecutor's statement was not improper, there is no need to discuss whether Roubideaux was prejudiced by the statement.

¶17    Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE