DA 06-0691

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 9

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

KYLE ROBERT KOLB,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-2006-031 (B)
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, C. Mark Fowler,
Assistant Attorney General, Helena, Montana

          Ed Corrigan, Flathead County Attorney, Daniel Guzynski, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:  January 4, 2008

Decided:  January 13, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     A jury in the Eleventh Judicial District Court, Flathead County, found Kyle Robert Kolb guilty of felony robbery.  Kolb appeals.  We affirm.

¶2     The issues are:

¶3     1.  Did the District Court err when it quashed the subpoena of Missoulian reporter Tristan Scott?

¶4     2.  Did the District Court abuse its discretion by excluding evidence of Brian Hughes' criminal charges and pretrial release conditions?

¶5     3.  Did the prosecutor commit misconduct during closing argument by shifting the burden of proof to the defense?

## BACKGROUND

¶6     On the evening of January 14, 2006, Missoula, Montana, residents Matthew Madsen and Brian Hughes traveled to Whitefish, Montana, with plans to ski at Big Mountain Ski Resort the following day.  They checked into a motel and then went out to play pool, socialize, and drink at local bars.

¶7     Madsen and Hughes met Jacob Hogsett, Brett Johnson, and defendant Kyle Kolb at a bar called Casey's.  When Casey's closed, Madsen's and Hughes' new acquaintances agreed to give them a ride back to their motel.  En route to the motel, they discussed the possibility of drinking more alcohol, smoking marijuana, and bringing some girls up to Madsen's and Hughes' motel room.  They also stopped at an ATM machine, where Hughes withdrew $200, some of which he planned to use to purchase marijuana from Hogsett.  Once at the motel, Madsen and Hughes invited the others to their room.

2

¶8     According to Madsen and Hughes, immediately after the group entered their motel room, Kolb, Hogsett, and Johnson placed both of them in headlocks and forced them down onto the beds. The trio choked and punched Madsen and Hughes and took their money, including the $200 Hughes had just withdrawn from the ATM. Both Madsen and Hughes testified at Kolb's trial that, during the melee, Kolb and Hogsett brandished a handgun with which they threatened to shoot Hughes. When the three left the room, Hughes ran after them out into the parking lot, where he kicked their truck and pounded on its windows before they drove away. He also noted the truck's license plate number and called 911. After law enforcement officers responded to his call, Hughes was taken to an emergency room for treatment of hematomas on both sides of his forehead and injuries to his hand and his ankle. Later that night, an officer from the Columbia Falls Police Department stopped the truck and arrested Kolb, Hogsett, and Johnson. Kolb had $203 in his pocket when he was arrested.

¶9     Kolb was charged with felony robbery for inflicting bodily injury upon another, threatening to inflict bodily injury upon another, or purposely or knowingly putting another in fear of immediate bodily injury in the course of committing a theft. At the end of a three-day trial, the jury found Kolb guilty. He appeals.

## STANDARDS OF REVIEW

¶10     Under circumstances similar to those presented here, we have reviewed a district court's quashing of a subpoena as trial error, employing harmless error analysis. *See State v. Slavin*, 2004 MT 76, ¶¶ 19-20, 320 Mont. 425, ¶¶ 19-20, 87 P.3d 495, ¶¶ 19-20. We review evidentiary rulings for abuse of discretion. *State v. Snell*, 2004 MT 334, ¶ 17,

3

324 Mont. 173, ¶ 17, 103 P.3d 503, ¶ 17. To determine whether comments by a prosecutor require reversal, we first examine whether the prosecutor's comments were improper and, if so, we then determine whether the comments prejudiced the defendant's right to a fair and impartial trial. *State v. Sanchez*, 2008 MT 27, ¶ 51, 341 Mont. 240, ¶ 51, 177 P.3d 444, ¶ 51.

**ISSUE 1**

¶11 *Did the District Court err when it quashed the subpoena of Missoulian reporter Tristan Scott?*

¶12 Prior to trial, Kolb subpoenaed Tristan Scott, a reporter for the Missoulian newspaper who had interviewed Hughes for an article about the robbery. In that newspaper article, Scott attributed to Hughes a statement that a "shotgun" was pointed at him during the robbery. The Missoulian moved to quash the subpoena pursuant to § 26-1-902, MCA—a provision of the Media Confidentiality Act (Act) which protects media representatives from being required to disclose information in a legal proceeding if the information was gathered, received, or processed in the course of the media representative's employment. The defense opposed the motion to quash on grounds that the information sought by subpoena was non-confidential and that the Act cannot restrict a criminal defendant's right to a fair trial. After reviewing the arguments from both sides, the District Court quashed the subpoena.

¶13 We acknowledge Kolb's argument that the District Court did not correctly balance his constitutional right to a fair trial as against Scott's rights under § 26-1-902, MCA, and the First Amendment to the United States Constitution. More accurately stated, the

4

District Court avoided the constitutional issue by determining there was another way for Kolb to get the information he sought into evidence. This approach was proper; as a matter of longstanding principle, courts avoid constitutional issues whenever possible. *See State v. Carlson*, 2000 MT 320, ¶ 17, 302 Mont. 508, ¶ 17, 15 P.3d 893, ¶ 17.

¶14   Kolb sought to present evidence through Scott that Hughes had made an inconsistent statement about the type of gun—a shotgun, instead of a handgun—used in the robbery. Relying on *Slavin*, he argues that, in order for the quashing of the subpoena to be upheld, other live witnesses must have been available to testify to his inconsistent statement about a "shotgun."

¶15   The District Court also relied on *Slavin* in relation to this issue. In that case, the district court quashed the defendant's subpoenas of a newspaper reporter and editor on grounds that several other witnesses were available to testify to the same facts as the witnesses whose subpoenas were quashed. On appeal, the defendant argued his right to compel attendance of witnesses should prevail over the reporter and editor's rights under § 26-1-902, MCA. We held that, even if quashing the subpoenas was error, any error would be harmless when considered in light of the abundant cumulative evidence that proved the same point. *Slavin*, ¶ 26.

¶16   *Slavin* does not stand for the proposition for which Kolb cites it; it represents an example of circumstances under which other available evidence made unnecessary the issuance of a subpoena. Here, like in *Slavin*, the District Court noted the information sought was otherwise available. The court stated that, given the Missoulian article's attribution to Hughes of a statement that a "shotgun" had been used in the robbery,

Kolb's counsel could question Hughes on whether he told the reporter a shotgun was used. If Hughes replied affirmatively, the defense could suggest the jury use that information to assess Hughes' credibility. If, on the other hand, Hughes claimed he did not make the statement, the Missoulian article could be introduced as extrinsic evidence of a prior inconsistent statement by Hughes.

¶17 Under the circumstances presented here, the District Court determined Kolb had not established that the evidence sought was otherwise unavailable. Therefore, the court ruled, no constitutional analysis was triggered and the subpoena was properly quashed. We agree. We hold the District Court did not err in quashing Scott's subpoena.

### ISSUE 2

¶18 *Did the District Court abuse its discretion by excluding evidence of Brian Hughes' criminal charges and pretrial release conditions?*

¶19 Prior to trial, the State moved in limine to exclude all testimony regarding the criminal histories of any of the witnesses based on M. R. Evid. 609, which prohibits the use of evidence that a witness has been convicted of a crime to attack the witness's credibility. Kolb then filed a notice of intent to disclose evidence of a pending criminal charge against Hughes, relying on M. R. Evid. 404(b), which allows evidence of other crimes, wrongs, or acts for purposes including proof of motive. Kolb contended Hughes's admitted acts of entering bars and consuming alcohol on the night of January 14, 2006, violated the conditions of his pretrial release in a criminal case then pending against him and presented a motive for him to provide false testimony in this case. The District Court rejected that contention on the basis that Hughes had already admitted to

6

violating his conditions of release in the pending criminal matter. The court also relied on the M. R. Evid. 609 prohibition on use of evidence that a witness has been convicted of a crime. The court granted the State's motion in limine and struck Kolb's notice of intent to disclose.

¶20 On appeal, Kolb argues evidence of Hughes' criminal record should have been admitted for purposes of establishing another motive for fabricating the robbery—to conceal a drug deal and his possession of marijuana in the motel room. Kolb also argues the "other crimes" evidence should have been admitted under this Court's modified *Just* rule. *See State v. Matt*, 249 Mont. 136, 142, 814 P.2d 52, 56 (1991).

¶21 As a longstanding rule, we will not consider an issue first raised on appeal or a change in legal theory on appeal. *State v. Peterson*, 2002 MT 65, ¶ 24, 309 Mont. 199, ¶ 24, 44 P.3d 499, ¶ 24. Aside from being raised for the first time on appeal, neither of the two new legal theories raised here has merit. Why would Hughes fabricate a robbery to conceal a drug deal and his possession of marijuana, when he simply could have not reported the robbery and achieved the same "conceal" result with much less risk of being exposed? As to the modified *Just* rule, that rule relates to other crimes, wrongs, or acts of a criminal defendant. Kolb has cited no authority to support the proposition that the modified *Just* rule applies to evidence of other crimes, wrongs or acts of a non-defendant witness, except in limited circumstances where the defendant is attempting to inculpate another person for the crime. *See e.g. State v. Clifford*, 2005 MT 219, ¶ 44, 328 Mont. 300, ¶ 44, 121 P.3d 489, ¶ 44. Those circumstances are not presented here.

7

¶22 We hold Kolb has failed to establish that the District Court abused its discretion in excluding evidence of Hughes' criminal charges and pretrial release conditions.

## ISSUE 3

¶23 *Did the prosecutor commit misconduct during closing argument by shifting the burden of proof to the defense?*

¶24 During the State's rebuttal closing argument, the prosecutor directed the jury's attention to the defense's failure to call three witnesses who allegedly observed Hughes following Kolb, Hogsett, and Johnson out into the motel parking lot after the robbery:

> [T]hey keep talking about maybe these three witnesses that were there. Well, [defense counsel] has subpoena power also, did he bring those people in? If he knew they were going to say something different, and this is a very important—

At that point, counsel for the defense objected that the defense had no obligation to prove anything, and the court commented, "Well, I've told the jurors about that." The prosecutor then proceeded with another line of argument. Kolb did not move for a mistrial.

¶25 Kolb contends the prosecutor's remark constitutes reversible error under *State v. Newman*, 2005 MT 348, 330 Mont. 160, 127 P.3d 374 (Nelson, J., specially concurring). We disagree.

¶26 In *Newman*, two members of this Court voted to reverse the criminal conviction based on a conclusion that prosecutorial comments during closing argument had deprived the defendant of a fair trial by referring to the defense's failure to present witnesses to support his theory of the case. Because it represents the view of just two members of the

Court, the concurring opinion in *Newman* does not constitute controlling authority. *See Doll v. Major Muffler Cntrs., Inc.*, 208 Mont. 401, 408, 687 P.2d 48, 51-52 (1984).

¶27 Additionally, the prosecutor's comment must be placed in context. *See State v. Roubideaux*, 2005 MT 324, ¶ 15, 329 Mont. 521, ¶ 15, 125 P.3d 1114, ¶ 15. In *Roubideaux*, the prosecutor commented in closing argument that, as a result of the defense's presentation of an alternative theory of the events underlying the charges, "all [the jury] ha[d] to do [wa]s decide who is telling the truth." *Roubideaux*, ¶ 9. The prosecutor also clearly referred in closing argument to the State's burden of proving the case beyond a reasonable doubt. In that context, we ruled the prosecutor's statement was not improper. *Roubideaux*, ¶ 15. Here, like in *Roubideaux*, the prosecutor acknowledged during closing argument that he bore the burden of establishing his case beyond a reasonable doubt.

¶28 Moreover, in the present case, it was defense counsel who first introduced at trial the matter of the three witnesses from the parking lot. During his opening statement, defense counsel told the jury that three witnesses saw the men come running out of the motel and did not see a gun. Then, during cross-examination of Hughes, defense counsel asked if it was true that three witnesses had observed him running after and yelling at Kolb, Hogsett, and Johnson as they ran across the parking lot outside the motel. Finally, in his closing argument, Kolb's counsel pointed out the prosecution had failed to call any of the parking lot witnesses.

¶29 We hold that, placed in context, the prosecutor's comment was not improper. Thus, we need not consider whether the comment prejudiced Kolb's right to a fair trial.

9

¶30   Affirmed.


/S/ JAMES C. NELSON


We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE