DA 07-0341

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 82

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

GORDON EDWARD MAKARCHUK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 03-403B
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Joslyn Hunt, Assistant Appellate
Defender; Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

          Ed Corrigan, Flathead County Attorney; Kalispell, Montana

          Submitted on Briefs:  June 4, 2008

          Decided:  March 17, 2009

Filed:

          _____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Gordon Edward Makarchuk (Makarchuk) appeals from the order, judgment, and sentence of the Eleventh Judicial District Court, Flathead County, denying his motion for new trial, setting conditions of parole and probation, and refusing to credit him time served on house arrest pending trial. We affirm in part and reverse in part.

¶2 We consider the following restated issues on appeal:

¶3 1. Was Makarchuk's constitutional right to be present at critical stages of the trial violated when he was absent from a portion of the conference settling jury instructions?

¶4 2. Did the District Court err when denying Makarchuk's motion for a new trial by concluding that the State's closing argument was proper?

¶5 3. Did the District Court exceed its statutory authority by imposing conditions on Makarchuk's parole?

¶6 4. Did the District Court err by failing to credit Makarchuk for time served on house arrest as a condition of his release on bond pending trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 In September 2003, Makarchuk was living in a camper trailer located on a dairy farm. The farm owners had initially permitted Makarchuk to stay on the property in exchange for work, but eventually asked Makarchuk to leave. However, Makarchuk did not leave, and was thereafter cited for trespass and escorted off the property. A short time later, Makarchuk returned to the property and was again cited for trespass. While on the property, police officers smelled strong chemical odors emanating from the trailer and

2

obtained a search warrant. While searching the trailer, police discovered materials and chemical residues used in the manufacture of methamphetamine and consistent with operation of a drug lab. Makarchuk was arrested and charged with the offense of operating an unlawful clandestine laboratory, a felony, pursuant to § 45-9-132(1), MCA. Makarchuk pled not guilty.

¶8 Prior to trial, Makarchuk moved for release on his own recognizance. The motion was denied. Thereafter, pursuant to a stipulation, Makarchuk was "released upon formal house arrest" with several conditions. Nearly nine months later, the court revoked Makarchuk's release on bond when he violated the conditions of release.

¶9 Trial commenced on October 16, 2006, and the State presented uncontroverted evidence that a meth lab was present in the trailer where Makarchuk was living. It was Makarchuk's theory at trial that he was unaware of the drug lab because he was kicked off the property and was absent from the trailer for a few days. Makarchuk testified that he returned to the property for purposes of gathering his belongings and that before the police arrived he called two people, Jim Bernard and Matt Marvin, and asked them to come over and help him. Makarchuk testified that he would not have made the telephone calls if he had known there was a drug lab in the trailer. Neither Jim Bernard nor Matt Marvin testified at trial.

¶10 At the close of evidence, the District Court excused the jury and began to settle jury instructions with counsel in-chambers. Part way through the conference, Prosecutor Dan Guzynski realized that Makarchuk was not present. When asked if Makarchuk

3

waived his right to be present, Defense Counsel John Putikka stated: "I don't know if I specifically advised him he had the right to be here. I told him he didn't need to be here unless he wanted to be, and he said no, that's okay." The court directed that Makarchuk be brought to the conference, and the following dialogue occurred:

> THE COURT: Mr. Makarchuk, sorry to disturb, whatever it is you went downstairs to do. We're settling instructions, and I know that Mr. Putikka told you we were going to do this, and my impression was he asked you if you wanted to be here and you said that was fine, you would go on downstairs.
>
> MR. PUTIKKA: I didn't specifically ask you if you waived your right to be here, and so that's some concern of the State, so they brought you up here, did you want to be here did I misunderstand[?]
>
> MR. MAKARCHUK: If it's no trouble.
>
> THE COURT: It's no trouble for you to stay for the rest, although we have done a fair amount, but I want to make sure you don't want us to repeat for you everything that we have done up to this point.
>
> MR. MAKARCHUK: I'm fine, I think it's out of my hands at this point, or whatever if it was.
>
> THE COURT: Okay. And so even though we have done some things here outside of your presence, you will waive your presence up to this point, but you'd just as soon stay for the rest, am I understanding you right?
>
> MR. MAKARCHUK: Yes.

Makarchuk remained in-chambers for the remainder of the conference.

¶11 During the State's rebuttal closing argument the prosecutor referenced Makarchuk's testimony stating:

> [I]t is the State's burden to prove a case, we have that burden of proof, and we acknowledge that, but, you know, when the Defendant is trying to put a fact in front of you they have the opportunity to call other witnesses besides

4

the Defendant. All—the whole case—the Defendant's case is propelled by one thing, and that's what [Makarchuk] says. [Makarchuk] says he made a phone call in that shop. Did they get phone records—did they get phone records from the farm? Did they subpoena those phone records, get phone records to show that calls were made? Did they call Jim Bernard to the stand? Did they call Matt Marvin to the stand? No.

Makarchuk's counsel objected and an off the record side-bar conference ensued. Following the sidebar, Guzynski continued his argument, again commenting on Makarchuk's testimony and asking the jury to "determine his credibility."

¶12 The jury subsequently found Makarchuk guilty of operating an unlawful clandestine methamphetamine laboratory. Makarchuk filed a motion for new trial on the basis that the State's closing argument created reversible error and denied him due process of law and a fair trial. The motion was denied.

¶13 The District Court sentenced Makarchuk to twenty years in the Montana State Prison with ten years suspended with conditions. The judgment provides nineteen enumerated conditions of "parole and probation." The District Court did not credit Makarchuk for the 264 days he was released on house arrest pending trial. Makarchuk appeals.

**STANDARD OF REVIEW**

¶14 Whether a criminal defendant's right to be present at all critical stages of his trial was violated is a question of constitutional law for which our review is plenary. *State v. Roedel*, 2007 MT 291, ¶ 35, 339 Mont. 489, 171 P.3d 694; *State v. Mann*, 2006 MT 160, ¶ 10, 332 Mont. 476, 139 P.3d 159; *State v. Matt*, 2008 MT 444, ¶ 12, 347 Mont. 530, 199 P.3d 244. Statutes are presumed to be constitutional. *State v. Samples*, 2008 MT

416, ¶ 14, 347 Mont. 292, 198 P.3d 803. We review a district court's denial of a motion for new trial for abuse of discretion. *State v. Misner*, 2007 MT 235, ¶ 20, 339 Mont. 176, 168 P.3d 679. We review criminal sentences for legality only, to determine whether they are within the parameters set by statute. *State v. Vernes*, 2006 MT 32, ¶ 27, 331 Mont. 129, 130 P.3d 169.

**DISCUSSION**

¶15    **1. Was Makarchuk's constitutional right to be present at critical stages of the trial violated when he was absent from a portion of the conference settling jury instructions?**

¶16    Makarchuk argues that the District Court violated his Sixth Amendment right under the United States Constitution, and corresponding right under Article II, Section 24 of the Montana Constitution, to be present at all criminal proceedings against him when he was absent from the in-chamber conference where counsel settled a portion of the jury instructions. Makarchuk asserts that the conference was a critical stage of the proceedings for which he did not effectively waive his right to be present, and his exclusion from the conference amounts to "structural error, thereby requiring reversal of [his] conviction and a new trial."

¶17    The State responds that pursuant to § 46-16-410(4), MCA, the presence of the defendant is not required during the settlement of jury instructions. The State contends that conferences consisting of "purely legal" matters are not critical stages of trial because the "criminal defendant can do little to aid his defense." In the alternative, the State argues that Makarchuk waived his right to be present at the conference, and failed

6

to challenge the constitutionality of § 46-16-410(4), MCA, which allows a defendant to be absent from the settling of jury instructions. The State asks that we affirm under the same rationale as in *Roedel*, where we declined to undertake a constitutional analysis when the statute had not been challenged ("Roedel does not challenge the statute's constitutionality. Accordingly, we will not address whether § 46-16-410(4), MCA, impermissibly relieves a court of the obligation to obtain an express waiver of a defendant's presence from the settling of jury instructions." *Roedel*, ¶ 60).

¶18   In his reply brief, Makarchuk acknowledges the failure to challenge § 46-16-410(4), MCA, in the District Court, and offers a belated constitutional challenge to the statute. Makarchuk explains that *Roedel* was decided after Makarchuk's opening brief was filed, and therefore the statute was not challenged earlier.[1] Makarchuk reasons that *Roedel* represents a "new development in the law that in order to make a constitutional argument, the constitutionality of a statute must first be challenged" and asks that we not apply the new development to his case, but declare the statute unconstitutional despite the lack of a previous challenge.

¶19   However, this principle is not a new development in the law. Statutes are presumed to be constitutional, and "[a]bsent a successful constitutional challenge to the propriety of a statute, we are obligated to apply it." *Elliott v. State Dept. of Revenue*, 2006 MT 267, ¶ 15, 334 Mont. 195, 146 P.3d 741. Absent the extraordinary showing necessary for the Court to undertake review under the plain error doctrine, likewise not

---

[1] Of course, the statute was subject to challenge even before *Roedel* was decided.

argued in Makarchuk's opening brief, constitutional challenges must generally be raised in the district court. Additionally, we have explained that "[w]e will not address the merits of an issue presented for the first time in a reply brief on appeal." *Pengra v. State,* 2000 MT 291, ¶ 13, 302 Mont. 276, 14 P.3d 499.

¶20 Having failed to challenge the constitutionality of § 46-16-410(4), MCA, in the District Court or in his opening brief on appeal, Makarchuk has failed to preserve the issue. Accordingly, we will not consider his arguments regarding the constitutionality of § 46-16-410(4), MCA, and affirm this issue pursuant to our decision in *Roedel.*

¶21 **2. Did the District Court err when denying Makarchuk's motion for a new trial by concluding that the State's closing argument was proper?**

¶22 Makarchuk argues that the State's remarks during rebuttal closing argument deprived him of his right to a fair trial and due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution. Makarchuk contends that "the State's closing argument impinged on [his] presumption of innocence and attempted to mislead the jury about the burden of proof" when Guzynski "criticized [him] for failing to present certain evidence . . . and for failing to call particular witnesses . . . ." Makarchuk asserts that the only way to correct this error is for a new trial to be granted.

¶23 The State responds that the "comments at issue were appropriate argument about the facts in evidence and the credibility of Makarchuk as a witness, prefaced by a commitment that the State bore the burden of truth." The State argues that Makarchuk

has not demonstrated that he was actually prejudiced by the comments and accordingly the District Court did not err by denying his motion for a new trial.

¶24 We consider alleged improper statements during closing argument in the context of the entire argument. *State v. Roubideaux*, 2005 MT 324, ¶ 15, 329 Mont. 521, 125 P.3d 1114. We will not presume prejudice from the alleged misconduct, rather the defendant must show that the argument violated his substantial rights. *Roubideaux*, ¶ 11. While it is improper for the prosecution to comment on the failure of a defendant to testify, "the prosecution is permitted to point out facts at issue which could have been controverted by persons other than the defendant, but were not." *State v. Rodarte*, 2002 MT 317, ¶ 14, 313 Mont. 131, 60 P.3d 983 (citing *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954 (1978)). Moreover, while the prosecutor may not comment on evidence not in the record and may not offer a personal opinion about the credibility of witnesses, the prosecutor may comment on contradictions in testimony as well as comment on evidence presented and suggest inferences the jury may draw therefrom. *State v. Daniels*, 2003 MT 247, ¶ 26, 317 Mont. 331, 77 P.3d 224.

¶25 Makarchuk asserts that Guzynski's closing argument impermissibly suggested that the jury should infer guilt from his failure to subpoena the phone records or have Marvin and Bernard testify. Makarchuk likens his case to the plurality decision in *State v. Newman*, 2005 MT 348, 330 Mont. 160, 127 P.3d 374. In *Newman*, two members of this Court voted to reverse the criminal conviction based on a conclusion that prosecutorial comments during closing argument had deprived the defendant of a fair trial by referring

to the defense's failure to present witnesses to support his theory of the case. However, we recently explained that "[b]ecause it represents the view of just two members of the Court, the concurring opinion in *Newman* does not constitute controlling authority." *State v. Kolb*, 2009 MT 9, ¶ 26, 349 Mont. 10, 200 P.3d 504. Consequently, *Newman* offers no precedential value for this issue, and we analyze the current alleged error pursuant to our other well established rules regarding the acceptable scope of closing argument.

¶26 First, Makarchuk's argument that the State attempted to mislead the jury about the burden of proof is rebutted by the correct explanation offered to the jury by prosecutor Guzynski, that the State retained the burden of proof and the obligation to prove its case. We noted the significance of such a statement made by the prosecutor in rejecting a similar burden of proof argument offered by the defendant in *Roubideaux*. Second, during Makarchuk's closing argument, defense counsel argued at length about the weakness of the State's case in light of Makarchuk's testimony that he telephoned persons to come to the camper. Consequently, the State's rebuttal argument referencing the phone records and lack of testimony by Marvin and Bernard was, as the District Court concluded, presented to "point out facts at issue which could have been controverted by persons other than the defendant." *Rodarte*, ¶ 14. Finally, considering the closing argument in context and as a whole, *Roubideaux*, ¶ 15, it is clear that the State was asking the jury to evaluate Makarchuk's credibility—an important consideration given defense counsel's primary reliance on Makarchuk's testimony. Indeed, Guzynski stated several

10

times that it was "important that you evaluate [Makarchuk's] credibility." Such an argument about witness credibility is well within the permissible scope of closing argument. Accordingly, the District Court did not abuse its discretion by denying Makarchuk's motion for a new trial.

¶27 **3. Did the District Court exceed its statutory authority by imposing conditions on Makarchuk's parole?**

¶28 Makarchuk argues that the District Court lacked authority to set conditions of parole. Makarchuk asserts that while a "district court has the authority to impose conditions of probation" under § 46-18-202(2), MCA, "no explicit statutory authority allows [the court], except in specific circumstances, to impose conditions affecting parole," adding that his situation does not fall within any of these specific circumstances.

¶29 The State responds that Makarchuk waived this argument on appeal by failing to raise an objection at the time of sentencing. The State also asserts that the District Court is authorized to impose conditions on parole pursuant to § 46-18-202(1)(f), MCA, because it allows the court to impose "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Makarchuk replies that he may raise this issue for the first time on appeal pursuant to *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979).

¶30 Generally, we refuse to review on appeal an issue which the party failed to object to at trial. *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892. However, in *Lenihan* we provided an exception to that rule and allowed appellate review of criminal sentences alleged to be illegal or in excess of statutory mandates, regardless of

11

whether the defendant raised an objection in the trial court. *Kotwicki*, ¶ 8. The challenged sentence must be plausibly illegal, and not just objectionable. *Kotwicki*, ¶¶ 16-18.

¶31 Recently, in *State v. Burch*, 2008 MT 118, 342 Mont. 499, 182 P.3d 66, we rejected the State's argument, likewise offered here, that "the statutes governing a sentencing judge's authority gives a judge residual authority to impose parole conditions . . . ." *Burch*, ¶ 24. We concluded that "nothing in § 46-18-201, MCA, gives sentencing judges the authority to impose parole conditions." *Burch*, ¶ 26. Consequently, we agree with Makarchuk that, while a district court has authority in limited situations to impose conditions of parole, *see e.g. Burch*, ¶ 30 (explaining that a district court has authority pursuant to § 46-18-255(1), MCA, to impose conditions of parole on defendants convicted of a sexual or violent offense), Makarchuk does not fit within those recognized exceptions. Accordingly, the parole conditions imposed by the District Court are illegal as being beyond the statutory authority of the court, and are properly challenged on appeal pursuant to *Lenihan* and *Kotwicki*. We reverse Makarchuk's sentence to the extent the conditions imposed by the District Court apply to Makarchuk's parole.

¶32 **4. Did the District Court err by failing to credit Makarchuk for time served on house arrest as a condition of his release on bond pending trial?**

¶33 Makarchuk's last issue is that the District Court erred by not crediting his sentence for time served while on house arrest pending trial. Makarchuk argues that, pursuant to § 46-18-203(7)(b), MCA, he is entitled to credit for the approximately nine months he served on house arrest. The State responds that Makarchuk failed to preserve this issue

12

for appeal because he did not "object or request at sentencing that credit be given for the time that he was released on house arrest." Moreover, the State asserts that the *Lenihan* exception does not apply because it is within the court's discretion, as opposed to "statutorily required," to credit an offender with the type of house arrest at issue here. Because the District Court was not required to credit Makarchuk's sentence with the time spent, even if he had objected, the State argues that the issue renders the sentence objectionable, but not illegal for purposes of *Lenihan*.

¶34 However, though the State offers a viable argument, Makarchuk notes that we recently denied his petition for habeas corpus which had raised this issue, explaining that he had also raised the issue on direct appeal and concluding that "we will address the issue raised in Makarchuk's petition in the appeal with the benefit of the full District Court record."[2]

¶35 Home arrest procedures are governed by Title 46, Chapter 18, Part 10 of the Montana Code Annotated. "Home arrest" is statutorily defined as "the use of a person's home for purposes of confinement and home arrest procedures and conditions imposed under this part." Section 46-18-1001, MCA. Pursuant to § 46-18-1002(1), MCA, a defendant may petition the sentencing court for an order directing that all or a portion of his sentence be served on house arrest. If such an order is granted, it must include a specific plan setting forth the conditions of the house arrest. Section 46-18-1002(3), MCA. Pursuant to § 46-18-203(7)(b), MCA, upon revocation of a suspended or deferred

---

[2] *Makarchuk v. State*, OP 07-0600.

13

sentence, "[c]redit must be allowed for time served in a detention center or home arrest time already served."

¶36 We considered a similar issue in *State v. Gulbranson*, 2003 MT 139, 316 MT 163, 69 P.3d 1187, *overruled on other grounds*, *State v. Herman*, 2008 MT 187, ¶ 12 n. 1, 343 Mont. 494, 188 P.3d 978. Gulbranson sought credit for time he spent on "informal house arrest" which was a condition of his release on bond. We concluded that informal house arrest was not the "'house arrest' as provided for in Title 46, Chapter 18, Part 10 of the MCA," because it was not a condition of his suspended sentence and Gulbranson was not required to wear an electronic monitoring device. *Gulbranson*, ¶ 12. We concluded that § 46-18-203(7)(b), MCA, did not require Gulbranson's sentences be credited with the time served on informal house arrest. *Gulbranson*, ¶ 12.

¶37 The situation here is similar to *Gulbranson*. Like Gulbranson, Makarchuk was not required to wear an electronic monitoring device and was assigned to house arrest as a condition of his release on bond, rather than as a condition of his later suspended sentence. The only difference between these cases is that Makarchuk's release was ordered pursuant to a stipulation and was conditioned by use of the term "formal house arrest." Makarchuk argues that this difference in wording and the "formal stipulation" requires a different outcome than in *Gulbranson*, and that the District Court "should have to credit Makarchuk for the time . . . ." However, though the house arrest here was described within the bond release order as "formal," and was stipulated to by the parties, it nonetheless does not meet the statutory definition of "home arrest" as contemplated by

14

Title 46, Chapter 18, Part 10. "Home arrest" is a procedure for serving a suspended sentence and, as the State notes, § 46-18-203(7)(b), MCA, "does not require that Makarchuk receive credit for the time he spent on formal house arrest as a condition of his pretrial release." Consistent with our opinion in *Gulbranson*, we conclude that the District Court was not required to credit Makarchuk with the 264 days he spent on house arrest, and did not impose an illegal sentence by refusing to do so.

¶38 Affirmed.

/S/ JIM RICE

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON