DA 18-0542

FILED

04/21/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0542

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 92N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

JAMES MICHAEL WARREN,

Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 17-175
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John Ferguson, Ferguson Law Office, Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, J. Stuart Segrest, Assistant
Attorney General, Helena, Montana

Leo Gallagher, Lewis and Clark County Attorney, Melissa Broch, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:  February 26, 2020

Decided:  April 21, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant James Michael Warren (Warren) appeals the Judgment and Commitment issued by the First Judicial District Court, Lewis and Clark County, on July 24, 2018, following his felony assault with a weapon conviction after a jury trial. We affirm.

¶3 On March 22, 2017, Warren was riding his bicycle when he came across a fiberglass rod in the street and picked it up. Warren then ran into two of his acquaintances, Brian Owens (Owens) and Heather Servoss (Servoss), looking through a dumpster behind a thrift store near the Little Caesars restaurant on North Last Chance Gulch in Helena. Warren invited Owens and Servoss to share a pizza with him, and the three made their way to Little Caesars. After the group finished eating, Warren left on his bicycle.

¶4 Shortly after leaving Little Caesars, Warren realized his rear bicycle tire was flat. Warren, who believed Owens had previously stolen from him and owed him $120 from an incident the previous year, became convinced Owens was responsible for the flat tire. As such, Warren returned to Little Caesars, where Owens and Servoss remained, to confront Owens. Warren approached with the fiberglass rod in his hand, asked Owens if he "thought he was pretty slick, you know, flattening my rear tire," and then proceeded to attack Owens

2

with the fiberglass rod. Warren struck Owens roughly five times with the rod—knocking him to the ground and causing injury and bleeding—stopping when Servoss intervened and told him to stop. Warren then left the scene.

¶5 After Warren left, Servoss called an ambulance. Paramedics assessed Owens's injuries, but he refused to go to the hospital. Two weeks later, on April 5, 2017, Warren was interviewed by Helena Police Officer John Kaleczyc about the incident with Owens. Officer Kaleczyc read Warren his *Miranda*[1] rights, and Warren agreed to speak with him in an interview recorded on Officer Kaleczyc's body camera. Warren described his actions against Owens, stating that he was angry over Owens stealing from him and flattening his bike tire and "just [came] unhinged," "lost it," and that "what I did probably wasn't cool but every once in a while sometimes people need that shit." During the interview, Warren did not mention to Officer Kaleczyc that he thought he was in danger or acting in self-defense or that Owens was reaching into his backpack for a knife when Warren approached.

¶6 On May 3, 2017, Warren was charged with a single count of Assault with a Weapon, a felony, in violation of § 45-5-213(1)(a), MCA. The matter went to jury trial May 1-2, 2018. At trial, Warren presented a justifiable use of force defense, claiming he beat Owens with the fiberglass rod in self-defense, as he believed Owens was reaching into his backpack to grab a knife to attack him. At trial, Warren did not testify to seeing a knife in

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Owens's backpack at the time of the assault, stating only that he "knew . . . from the previous year that [Owens] had knives in his backpack[.]"

¶7 After the parties completed evidentiary presentation of their cases, but before closing arguments, the District Court read the jury instructions to the jury. These instructions included Instruction No. 28, the first aggressor instruction, which stated:

> The use of force in defense of a person is not available to a person who purposely or knowingly provokes the use of force against himself unless such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant.

After the District Court read the instructions, it reminded the jury that the full instructions would be available in the jury room and "that the attorneys are not witnesses and statements made by counsel during this trial are not evidence."

¶8 The prosecutor then began his closing argument, asking the jury to "look at the evidence and look at the law and make a decision." The prosecutor discussed how he intended to talk about the instructions and how they might apply to the case, but that the jury should go with their collective memories if he said "something that doesn't square with what the Judge has told you." The prosecutor then discussed how the jury instructions worked together, explaining the jury did not need to consider the lesser-included offense of assault if the State proved assault with a weapon. Turning then to the self-defense instructions, the prosecutor made the following statement:

> [S]o before you get to the self-defense instruction as it pertains to threat against him, the door you have to walk through is the aggressor statute, and that's instruction 28. So, as we discussed during voir dire, if somebody is the aggressor, if he starts it, he [then] cannot use self-defense. So as it

4

pertains to his need to act to defend himself, if you make a determination that he was the aggressor, then you don't even need to discuss self-defense.

Warren's counsel did not object to this statement, and the prosecutor continued discussing the jury instructions and elements of self-defense in his closing argument. After the prosecutor finished, Warren's counsel made her closing argument. Warren's counsel mentioned the justifiable use of force instruction before stating, "[Warren] thought [Owens] was reaching for the knife first, and then he defended himself. I don't think he started - - he didn't seem to start the situation." Warren's counsel argued Warren was justified in his use of force and asked the jury to find him not guilty of assault with a weapon. The prosecutor did not make a rebuttal argument and the matter was thereafter submitted to the jury for deliberation.

¶9 Partway through the jury's deliberations, the jury asked the District Court for clarification on Instruction Nos. 26 and 27, the justifiable use of force instructions. Without objection, the District Court responded, "Ladies and Gentlemen. In response to your questions concerning Instructions 26 and 27, I respectfully request you follow the instructions." The jury asked no further questions, and after deliberating for approximately three and a half hours, found Warren guilty of assault with a weapon. The District Court sentenced Warren to 20 years at the Montana State Prison, with four suspended.

¶10 Warren appeals, asserting the prosecutor committed prosecutorial misconduct during closing argument when he stated, "if somebody is the aggressor, if he starts it, he [then] cannot use self-defense . . . if you make a determination that he was the aggressor, then you don't even need to discuss self-defense" and also asserting defense counsel

5

provided ineffective assistance of counsel by not objecting to the prosecutor's statement during closing argument. We affirm on both issues.

¶11 We generally do not address issues of prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial. *State v. Haithcox*, 2019 MT 201, ¶ 23, 397 Mont. 103, 447 P.3d 452 (citing *State v. Longfellow,* 2008 MT 343, ¶ 24, 346 Mont. 286, 194 P.3d 694). We may, however, invoke plain error review and consider an unpreserved claim alleging prosecutorial misconduct in situations implicating a defendant's fundamental constitutional right and when failure to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Haithcox*, ¶ 23 (citing *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506). "The decision to invoke plain error review is a discretionary one that is to be used sparingly on a case-by-case basis." *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091 (citing *State v. Rosling*, 2008 MT 62, ¶ 77, 342 Mont. 1, 180 P.3d 1102).

¶12 Both the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee criminal defendants "the right to a fair trial by a jury." *Hayden*, ¶ 27. "A prosecutor's misconduct may be grounds for reversing a conviction and granting a new trial if the conduct deprives the defendant of a fair and impartial trial." *Haithcox*, ¶ 24 (citations omitted). We consider alleged improper statements made by a prosecutor during closing argument in the context of the entire argument. *State v. McDonald*, 2013 MT 97, ¶ 10, 369 Mont. 483, 299 P.3d 799 (citing *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213). "We will not

presume prejudice from the alleged misconduct, rather the defendant must show that the argument violated his substantial rights." *Makarchuk*, ¶ 24 (citing *State v. Roubideaux*, 2005 MT 324, ¶ 11, 329 Mont. 521, 125 P.3d 1114).

¶13 Warren's counsel did not object to the prosecutor's statement regarding Instruction No. 28, the first aggressor instruction, during closing argument. Thus, the issue was not properly preserved for appeal. Because the claim of prosecutorial misconduct was not preserved for appeal, Warren urges this Court to invoke plain error review. Plain error review is to be used "sparingly," and is not warranted here. *Hayden*, ¶ 17. In addition to the issue not being preserved for appeal, in the overall context of the prosecutor's closing, there was no prosecutorial misconduct. In sum, the prosecutor encouraged the jury to follow the District Court's jury instructions. Warren's right to a fair and impartial trial was not violated by the prosecutor's statement, the issue was not preserved for appeal, and we decline to invoke plain error review to further consider this claim.

¶14 We now turn to Warren's claim of ineffective assistance of counsel. "Only record-based ineffective assistance of counsel claims are considered on direct appeal." *State v. Howard*, 2011 MT 246, ¶ 18, 362 Mont. 196, 265 P.3d 606 (citing *State v. Trull*, 2006 MT 119, ¶ 25, 332 Mont. 233, 136 P.3d 551). Claims of ineffective assistance of counsel constitute mixed questions of law and fact which we review de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861 (citing *State v. Racz*, 2007 MT 244, ¶ 13, 339 Mont. 218, 168 P.3d 685). This Court has adopted the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), in judging ineffective assistance of counsel claims. *State v. Crider*, 2014 MT 139, ¶ 34, 375 Mont. 187, 328 P.3d

7

612 (citing *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095). In order to show ineffective assistance of counsel, "a defendant must prove both (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *State v. Ward*, 2020 MT 36, ¶ 18, 399 Mont. 16, 457 P.3d 955 (quoting *Crider*, ¶ 34). In analyzing prejudice, the defendant must show a "reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance." *State v. Brown*, 2011 MT 94, ¶ 12, 360 Mont. 278, 253 P.3d 859 (citation omitted).

¶15 Warren asserts his trial counsel was deficient for failing to object to the prosecutor's statement regarding Instruction No. 28 during closing argument and that his defense was prejudiced by the lack of objection. As discussed above, when placed in the context of his entire closing argument, the prosecutor's statement regarding Instruction No. 28 was not prosecutorial misconduct and, quite simply, there was nothing for which Warren's counsel needed to object. Warren's counsel was therefore not deficient for failing to object. Because Warren failed to prove the first prong of the *Strickland* test, it is unnecessary for this Court to address the second prong regarding prejudice. *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601. We note, however, that Warren was not prejudiced in this case as there is not a "reasonable probability that the result of the proceeding would have been different" had his counsel objected. *Brown*, ¶ 12. Warren walked back 60 yards to beat Owens with a fiberglass rod, and, though his bike was broken, had reasonable means to escape by simply walking or running away from Owens. The prosecutor's musings

8

regarding the first aggressor instruction do nothing to change those simple facts. Warren has not established ineffective assistance of his trial counsel.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR